```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


SHEILA OWENS-WILLIAMS,              )
                                    )
                Plaintiff,           )
                                    )
          v.                         )       1:16CV453
                                    )
CAROLYN W. COLVIN,                   )
Acting Commissioner of Social        )
Security,                            )
                                    )
                Defendant.           )
```

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Sheila Owens-Williams, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB").  (Docket Entry 2.)  Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 10, 12; see also Docket Entry 11 (Plaintiff's Memorandum); Docket Entry 13 (Defendant's Memorandum); Docket Entry 14 (Plaintiff's Response)).  For the reasons that follow, the Court should remand this matter for further administrative proceedings.

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging an onset date of September 14, 2012.  (Tr. 166-71.)  Upon denial of that application initially (Tr. 72-85, 101-04) and on reconsideration (Tr. 86-100, 107-110),

Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 113-16). Plaintiff and her attorney attended the hearing. (Tr. 44-71.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 27-39.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-7), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

    1. [Plaintiff] meets the insured status requirements of the [] Act through December 31, 2017.

    2. [Plaintiff] has not engaged in substantial gainful activity since September 14, 2012, the alleged onset date.

    3. [Plaintiff] has the following severe impairments: bilateral sensorineural hearing loss; osteoarthritis of the left knee; arthropathy of the lower lumbar spine; osteoarthritis of the right hip; and obesity.

    . . .

    4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

    . . .

    5. . . . [Plaintiff] has the residual functional capacity to perform medium work . . . with exceptions: She can occasionally stoop, kneel, or crawl. She must avoid concentrated exposure to workplace hazards. She can frequently interact with supervisors, coworkers, and the public.

    . . .

2

6. [Plaintiff] is capable of performing past relevant work as a certified medical technician. This work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity.

. . .

In the alternative, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that [Plaintiff] also can perform.

. . .

7. [Plaintiff] has not been under a disability, as defined in the [] Act, from September 14, 2012, through the date of this decision.

(Tr. 32-39 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Even given those limitations, the Court should remand this case for further administrative proceedings.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through

application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and

4

was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial

---

[1] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . .
(continued...)

6

whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

### B. Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

---

[3] (...continued)
[which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

(1) "[t]he ALJ erred by failing to assess the effect of Plaintiff's hearing loss on the RFC when she is unable to wear her hearing aide(s)" (Docket Entry 11 at 4 (bold font omitted)); and

(2) "[t]he ALJ erred by admitting bilateral sensorineural hearing loss was a [severe impairment] but failing to explain how work related limitations for this condition were included in the RFC" (id. at 7).

Defendant disputes Plaintiff's assignments of error, and urges that substantial evidence supports the finding of no disability. (See Docket Entry 13 at 3-10.)

**1. Impact of Ear Infections on RFC**

In Plaintiff's first assignment of error, she contends that the ALJ failed to assess the impact of Plaintiff's ear infections (and, more particularly, her resulting inability to wear hearing aids) on the RFC. (See Docket Entry 11 at 4-7.) In that regard, Plaintiff faults the ALJ for "misread[ing]" the opinions of consultative examiner Dr. Amon L. Funderburk and treating audiologist Dr. Pamela G. Houck. (Id. at 4.) Specifically, Plaintiff emphasizes that, although the ALJ relied on Dr. Funderburk's opinion that Plaintiff did not have any "communicative . . . limitations <u>when using her hearing aids</u>" (Tr. 264) to support the RFC determination (see Tr. 37), Dr. Funderburk did not assess Plaintiff's communicative abilities <u>when she could not wear hearing aids</u>. (Docket Entry 11 at 5 (citing Tr. 261-62, 264).) Similarly,

8

Plaintiff notes the ALJ's reliance on the opinion of Dr. Houck that Plaintiff "has significant difficulty discerning conversational speech <u>when she wears hearing aids</u>" (id. at 4 (emphasis added); <u>see also</u> Tr. 37, 305), but argues that "it is apparent from Dr. Houck's opinion that she felt [Plaintiff's] hearing difficulties were significantly exacerbated <u>when she was unable to wear her hearing aids during an ear infection</u>" (Docket Entry 11 at 5 (emphasis added) (referencing Tr. 305).) Plaintiff points out that Dr. Houck's opinion finds consistency with Plaintiff's function report in which she reported, "I have frequent ear infection[s] and when I do I can't even put aides in due to drainage, [and] then I am just deaf" (<u>id.</u> (quoting Tr. 197)), and with Plaintiff's hearing testimony that she removed her hearing aids when she had an ear infection, and that such infections occurred at least two to three times per year and lasted about four to five days each (<u>id.</u> at 6 (citing Tr. 48, 50, 60)).

Plaintiff further emphasizes that, because the ALJ included non-exertional limitations in the RFC, he should have called a vocational expert ("VE") to testify regarding the impact of those limitations, and Plaintiff's inability to wear hearing aids during ear infections, on the available jobs. (<u>Id.</u> at 6.) Plaintiff notes that "VE's routinely testify . . . that more than one unscheduled absence per month precludes competitive employment and per [Plaintiff's] testimony, 15 days or more per year, she would

9

have profound hearing loss (being without her hearing aids)." (Id. (citing Salyers v. Commissioner of Soc. Sec., No. 2:12CV00014, 2013 WL 4929141, at *2 (W.D. Va. Sept. 12, 2013) (unpublished) (Dist. J. adopting recommendation of Mag. J.), and Sweeney v. Apfel, No. CIV.AW-97-1631, 1998 WL 526579, at *3 (D. Md. Jan. 23, 1989) (unpublished).) Plaintiff's arguments have merit and warrant remand.

Here, the ALJ's RFC determination fails to address the impact of Plaintiff's ear infections on her ability to hear.[5] Dr. Funderburk did not address Plaintiff's ability to hear without hearing aids (see Tr. 260-64) and, thus, the ALJ's crediting of that opinion (see Tr. 37) does not satisfy the ALJ's duty of

---

[5] The parties dispute whether the ALJ properly found Plaintiff's ear infections a non-severe impairment. (See Docket Entry 13 at 9; Docket Entry 14 at 1-2; see also Tr. 34.) Plaintiff maintains that her recurrent ear infections constitute a severe impairment, because to establish a severe impairment, "[a] claimant 'does not have to show a twelve-month period of impairment unmarred by any symptom-free interval.'" (Docket Entry 14 at 1 (quoting Singletary v. Bowen, 798 F.2d 818, 821 (5th Cir. 1986).) In contrast, Defendant asserts that the ALJ properly found Plaintiff's ear infections a non-severe impairment, because "they only occurred two or three times per year and lasted only four or five days" and "[a] 'severe' impairment must meet the duration requirement and must have lasted or . . . be expected to last for a 'continuous' period of at least 12 months." (Docket Entry 13 at 9 (citing 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), and Walton v. Barnhart, 535 U.S. 212, 225 (2002).) The Court need not resolve this dispute, because the ALJ here found other severe impairments at step two of the SEP and therefore had a duty to consider all of Plaintiff's impairments, both severe and non-severe, in formulating the RFC. See Perry v. Colvin, No. 2:15-CV-01145, 2016 WL 1183155, at *4–5 (S.D.W. Va. Mar. 28, 2016) (unpublished) ("In any case involving a medical impairment severe enough to survive step two, an ALJ is required to consider all of a claimant's impairments, whether severe or non-severe, when determining RFC."); Singleton v. Astrue, C/A No. 9:08-1892-CMC-BM, 2009 WL 1942191, at *3 (D.S.C. July 2, 2009) (unpublished) (remarking that where claimant "makes a threshold showing of any 'severe' impairment, the ALJ continues with the sequential evaluation process and considers all impairments, both severe and nonsevere" (citation omitted)); 20 C.F.R. § 404.1545(e) ("[W]e will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your [RFC].").

10

explanation regarding whether the RFC should include limitations arising from Plaintiff's inability to wear hearing aids during ear infections. Similarly, Defendant argues that the ALJ accorded great weight to the opinion of state agency physician, Melvin L. Clayton, M.D., that, due to Plaintiff's hearing loss, she should avoid concentrated exposure to workplace hazards. (See Docket Entry 13 at 8 (citing Tr. 38, 94-96).) However, Dr. Clayton also did not expressly address Plaintiff's ability to hear when she cannot wear her hearing aids because of an ear infection. (See Tr. 94-96.)

In contrast, Dr. Houck did specifically address the impact of Plaintiff's recurrent ear infections on her ability to wear hearing aids:

> [Plaintiff] has a history of chronic ear infections, which interfere[] with her ability to wear amplification. She frequently can only wear one aid at a time due to these infections as the drainage gets in the aids and clogs them up. When she is home she often doesn't wear the aids at all so that air can get to her ears and hopefully dry them out. Unfortunately use o[f] hearing aids compounds the problem with the chronic infections as it creates a warm moist environment which breeds infections. This hearing loss has caused her a great deal of anxiety and depression due to the loss of ability to communicate. This has led to loss of employment and social isolation. This hearing loss prevents her from communicating in virtually all environments and makes it difficult for her to obtain employment.

(Tr. 305.) Although the ALJ recited at step two of the SEP Dr. Houck's opinion that Plaintiff's "recurrent ear infections interfered with her use of hearing aids" (Tr. 33), the ALJ did not

11

address that opinion in weighing Dr. Houck's opinions as part of the RFC determination:

> The undersigned gives little weight to Dr. Houck's assessment that [Plaintiff] has significant difficulty discerning conversational speech <u>when she wears hearing aids</u>. The opinion deserves little weight because it is contradicted by Dr. Funderburk's consultative report and [Plaintiff's] testimony.

(Tr. 37 (emphasis added).)

The ALJ should have expressly weighed Dr. Houck's opinion that Plaintiff's recurrent ear infections interfere with her ability to wear hearing aids, and either (A) accepted that opinion and discussed whether and/or what related, additional limitations, if any, would apply to the RFC, or (B) rejected the opinion and explained the basis for his rejection. See 20 C.F.R. § 404.1527(c) ("Regardless of its source, [the ALJ] will evaluate every medical opinion [he or she] receive[s]" and where an opinion does not warrant controlling weight, [the ALJ must] consider all of the . . . factors [in 20 C.F.R. § 404.1527(c)(1)-(6)] in deciding the weight [to] give to any medical opinion." (emphasis added)); Social Security Ruling 96-5p, <u>Medical Source Opinions on Issues Reserved to the Commissioner</u>, 1996 WL 374183, at *5 (July 2, 1996) (noting that ALJs "must weigh medical source statements . . . [and] provid[e] appropriate explanations for accepting or rejecting such opinions"); Social Security Ruling 96-8p, <u>Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims</u>, 1996 WL 374184, at *7 (July 2, 1996) ("The RFC

12

assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted."); see also Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984) (holding that reviewing court generally "cannot determine if findings are supported by substantial evidence unless the [ALJ] explicitly indicates the weight given to all of the relevant evidence"). The ALJ's failure to address the issue of Plaintiff's inability to wear hearing aids during ear infections as part of the RFC analysis renders the RFC determination unsupported by substantial evidence and/or precludes a finding that the RFC determination arose from a correct application of the law.

The ALJ's failure to address in the RFC determination Plaintiff's ability to hear when she cannot wear her hearing aids during ear infections also undermines the ALJ's step four conclusion that Plaintiff can return to her past relevant work as a certified medical technician (see Tr. 38), as well as his alternative step five determination that other jobs exist in significant numbers that Plaintiff could perform (see Tr. 38-39). Plaintiff testified that her job as a certified medical technician involved speaking with doctors on the telephone regarding patients' medication orders, and that she lost her job because she misheard a doctor's orders. (See Tr. 48, 50, 60; see also Tr. 192 (Plaintiff noting in Disability Report increasing difficulty of

13

speaking to doctors and families on telephone).)[6] Additionally, Plaintiff testified that she suffered from ear infections two to three times per year (or more) that lasted for up to four or five days each, during which time she could not wear her hearing aids. (Tr. 60). Audiological testing at Dr. Houck's office in October 2012 (see Tr. 306) demonstrated that without hearing aids, Plaintiff suffered from "profound sensorineural hearing loss" (Tr. 305). Given this record evidence, the ALJ's conclusions, reached without the assistance of a VE, that Plaintiff could return to her past relevant work as a certified medical technician (see Tr. 38), or other, unidentified jobs existing in significant numbers in the national economy (see Tr. 39) do not rest on a proper application of the law and/or lack the support of substantial evidence.

In sum, Plaintiff's first assignment of error has merit and warrants remand. Upon remand, the ALJ should call a VE to address the impact of any non-exertional limitations, and particularly hearing-related limitations (including Plaintiff's inability to wear hearing aids during ear infections), on Plaintiff's ability to return to her past relevant work and, if necessary, the occupational base of other available jobs.

---

[6] This testimony and evidence belies Defendant's declaration in brief that the record lacks any "evidence that Plaintiff's hearing loss which is a long term condition ever interfered with her ability to work in the past." (Docket Entry 13 at 7 n.2.) In addition, hearing treatment records reflect that, as of October 15, 2012, just one month after Plaintiff lost her job for mishearing a doctor's orders (see Tr. 192), Plaintiff's hearing had worsened by ten percent since her last audiological test (see Tr. 305).

14

### 2. Explanation of Limitations from Hearing Loss in RFC

In Plaintiff's second and final issue on review, she contends that "[t]he ALJ erred by admitting bilateral sensorineural hearing loss was a [severe impairment] but failing to explain how work related limitations for this condition were included in the RFC." (Docket Entry 11 at 7 (bold font omitted).) However, in light of the recommendation to remand, and the likelihood that, upon remand, the ALJ will reassess the RFC, no need exists to address Plaintiff's arguments directed at limitations from hearing loss in the RFC.

### III. CONCLUSION

Plaintiff has established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be vacated, and that the matter be remanded under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent this Recommendation. As a result, Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 10) should be granted in part (i.e., to the extent it requests remand), and Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) should be denied.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

December 30, 2016